<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DONALD BAKER, JR.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Civ. No. 06-4549 (DRD)

**O P I N I O N**

*Appearances:*

NORRIE & ASSOCIATES
By: Jake C. Santos, Esq.
500 International Drive, North, Suite 125
Mt. Olive, NJ 07828

    *Attorneys for Plaintiff*

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY for the District of New Jersey
By: Arthur Swerdloff, Esq.
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY  10278

    *Attorney for Defendant*

<u>**DEBEVOISE, Senior District Judge**</u>

    On September 22, 2006, Plaintiff, Donald Baker, Jr. ("Plaintiff") commenced this action

pursuant to section 205(g) of the Social Security Act (the "Act"), seeking the court's review of the final decision of the Commissioner of Social Security (the "SSA") that Plaintiff is not entitled to Disability Insurance Benefits ("Benefits") under sections 216(i) and 223 of the Social Security Act. Plaintiff seeks reversal of the SSA's decision on the grounds that the Administrative Law Judge ("ALJ") committed legal errors in reaching this decision and that the ALJ's conclusions are not supported by substantial evidence. For the reasons set forth below, the SSA's decision will be affirmed.

## I. BACKGROUND

Plaintiff was a sanitary worker for the Township of Roxbury until July 1, 2001, when he alleges that he became disabled because of knee pain associated with an earlier job injury, and various other ailments. (R. at 15) Plaintiff first filed an application for Benefits on February 14, 2003. (R. 15, 55-64.) On July 13, 2005, after his application for benefits and subsequent reconsideration request were denied, Plaintiff appeared before the Honorable Ralph J. Muehlig, ALJ, who determined that Plaintiff was not entitled to Benefits.

In rendering his determination, the ALJ heard the testimony of Plaintiff and Plaintiff's long-time friend, Robert Hackett ("Hackett"), and considered medical evidence submitted by Plaintiff and independent sources. Several reports document Plaintiff's leg and back pain, which began after Plaintiff jumped or slipped off a garbage truck on November 20, 1997. (R. at 17.) Plaintiff underwent surgery on his right and left knees, respectively, on December 12, 1997 and May 1, 1998. (Id.) He was examined by John Vitolo, M.D. who determined, on June 11, 1998, that Plaintiff was "doing much better" and would be returning to "regular work within a few weeks." (Id.) Thereafter, Plaintiff began complaining of knee pain for which he received a

2

variety of treatments, including a Cortisone injection and a series of prescriptions for anti-inflammatory and pain-relief drugs.

In February 2004, after complaining of depression and anxiety, Plaintiff underwent a psychiatric evaluation with Donald Moorehead, Psy.D. who diagnosed Plaintiff with "[a]djustment disorder with . . . [a]nxiety and depressed mood," and determined that Plaintiff should seek individual psychotherapy related to his feelings of depression. (R. at 267.) The ALJ did not find that any of the reports indicated that Plaintiff was unable to work or otherwise unable to function, and Dr. Moorehead's debilitation-related recommendations were made in connection with Plaintiff's knee injury, not Plaintiff's affective disorder. (Id.) The ALJ's interpretation of Dr. Moorehead's report was reasonable.

Finally, Plaintiff was examined by David Tiersten, M.D., an internal medicine physician, who concluded that there were "no clear medical observations that would indicate any limitation of activity." (R. at 18.)

Plaintiff also points to evidence that he has had several abscesses removed from his back, and complains of hiatal hernia and Barrett's esophagus. (R. at 19-20.)

After considering the medical reports and the hearing testimony, the ALJ issued a decision denying Plaintiff's request for Benefits. (R. at 15.) Contained in the decision were the ALJ's findings of fact and conclusions of law, which are discussed below.

Plaintiff timely appealed the ALJ's decision to the SSA's Appeals Council. (R. at 5.) The Appeals Council, however, denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the SSA in Plaintiff's case. (Id.) It is from ALJ's opinion as the final decision of the SSA that Plaintiff now seeks review.

## II. DISCUSSION

The only two issues before the Court are whether the appropriate legal standards were applied and whether the SSA's decision to deny Plaintiff's application for Benefits is supported by substantial evidence. Plaintiff asserts that the ALJ erred by ignoring substantial evidence of his physical impairment, by failing to determine whether his depressive impairment was severe, by determining that Plaintiff possesses the residual capacity to engage in sedentary work, and by determining that Plaintiff was able to work "with reasonable regularity." Plaintiff also asserts, in his reply submission, that the SSA's conclusions as to Plaintiff's depression, acid reflux and spine abscesses, singly and collectively, are not based upon substantial evidence. A review of the case law and the administrative record shows, however, that the ALJ committed no reversible legal error and the conclusions reached are supported by substantial evidence.

### A. Standard of Review

A district court's review of the SSA's factual conclusions is deferential and limited to determining whether the conclusions are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A district court is bound by the SSA's factual findings that are supported by substantial evidence, even if the district court would have reached a different factual conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). A district court, however, exercises plenary review of all legal issues in a case. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).

### B. Determination of Disability

Under the Social Security Act, disability insurance benefits are provided to individuals

who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work," § 423(d)(2)(A).

An ALJ determines whether an individual is disabled and therefore entitled to disability insurance benefits by using a five-step evaluation process. See 20 C.F.R. § 404.1520(a). A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry. The five stages of inquiry proceed as follows.

*Step 1: Substantial Gainful Activity.* The ALJ must first determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(*i*). Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(*i*).

*Step 2: Severity of Impairment.* If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(*ii*). An impairment is severe when it significantly limits the individual's physical or mental ability to do basic work activities. § 404.1520(c). If the ALJ finds that an individual's impairment is not severe or has not met the 12 month durational requirement, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(*ii*).

*Step 3: Listed Impairments.* If the ALJ determines that the claimant's impairment is

severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P.  20 C.F.R. § 404.1520(a)(4)(*iii*).  The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity.  If the ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled.  § 404.1520(a)(4)(*iii*).

*Step 4: Residual Functional Capacity.*  If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his past relevant work.  20 C.F.R. § 404.1520(a)(4)(*iv*).  Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his impairment.  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).  If the ALJ finds that the individual has the capacity to perform past work, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(*iv*).

*Step 5: Adjustment to Other Work.*  If the claimant cannot perform past work, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work.  20 C.F.R. § 404.1520(a)(4)(*v*).  Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).  If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(*v*).  However, if the ALJ finds that the individual cannot adjust to other work,

then the ALJ must find that the claimant is disabled.  Id.

While the individual claimant bears the burden of persuasion on steps one through four, the burden shifts to the SSA on the fifth step.  At the fifth step, the SSA must prove that the individual is capable of obtaining gainful employment other than his past relevant work and that jobs, which the individual can perform, exist in substantial numbers in the national economy.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

**C. The SSA's Findings and Conclusions**

In this case, the ALJ applied the five step analysis and concluded at the first step that Plaintiff was not engaging in any substantial gainful activity.  At the second and third steps, the ALJ determined that Plaintiff had one severe impairment, a joint disorder, but that the impairment was not listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P.  Plaintiff challenges the result reached at the third step, arguing that the pain and immobility caused by the knee injury meet the criteria set forth in the CFR.

At the fourth step, the ALJ considered Plaintiff's residual functional capacity and concluded that Plaintiff did not retain the ability to perform his past relevant work.  (R. at 22.)  At the fifth step, the determined that the SSA had met its burden of proving that there are other jobs existing in significant numbers in the national economy that the Plaintiff can perform.  (R. at 20.)

The court concludes that the ALJ's finding that Plaintiff has the ability to engage in sedentary work is supported by the evidence, and the determination of the ALJ will be affirmed.

*(1) The ALJ's Conclusions at Step Three Regarding Plaintiff's Knee Injury*

The ALJ concluded that the "medical evidence indicates that the claimant has joint pain,

an impairment that is 'severe' within the meaning of the CFR but not 'severe' enough to meet or medically equal, either singly or in combination, to the impairments listed" in the regulations. (R. at 16).

Plaintiff argues that the this determination is not supported by substantial evidence, and that Plaintiff has a musculoskeletal impairment as defined by the CFR. (Pl's Br at 12.) He contends that "the chronic pain suffered by the Plaintiff in his back and legs due to the degenerative joint disease in both of his knees" equals the impairments listed as musculoskeletal disorders. (Id.)

The ALJ's discussion of the evidence is thorough and reveals that the determination was based upon a careful and thorough consideration of the evidence. The court may not reverse a decision of the ALJ which is based on substantial evidence, even if the court's view of the evidence would have led to a different outcome. Hartranft, 181 F.3d at 360.

### *(2) The ALJ's Conclusions at Step Three Regarding Plaintiff's Affective Disorder*

Plaintiff argues at length that the ALJ erred by not finding that Plaintiff suffered from an affective disorder as defined in 20 C.F.R. § 404, App. 1 to Subpart P. Plaintiff contends that the medical reports revealed numerous symptoms including episodes of depression and suicidal thoughts during which Plaintiff complained of social withdrawal, isolation and crying spells, (R. at 265), and that he "got mad easily," (R. at 495).

Plaintiff claims that he satisfies Listing 12.04 as he meets the criteria of both parts A and B of this Listing. Plaintiff's Brief at 15-21. 20 C.F.R. Part 404, Subpart P, Appendix 1. However, the evidence of record does not support such a conclusion. Plaintiff alleges that he manifested four of the nine required symptoms contained in part A of Listing 12.04. Plaintiff's

Brief at 17-18. Specifically, Plaintiff alleges sleep disturbance, decreased energy, feelings of worthlessness, and thoughts of suicide. *Id.* However, there is no indication that such symptoms have been continuous, or even intermittent within the meaning of the Listing. *See* 20 C.F.R. Part 404, Subpart P., Appendix 1 § 12.00B ("The symptoms and signs may be intermittent or continuous depending on the nature of the disorder"). For example, Plaintiff cites only one instance of his reporting fatigue and loss of energy. *See* Plaintiff's Brief at 18; Tr. 265. Significantly, records from Dr. Anthony Lucatorte, Plaintiff's general practitioner, does not note the presence of such symptoms. (R. at 297-320).

However, a more detailed evaluation of the "A" criteria is unnecessary, since, as discussed below, substantial evidence shows that the "B" criteria is not met. The evidence does not support Plaintiff's allegations that his impairment results in a "marked restriction of activities of daily living," and "marked difficulties in maintaining concentration, persistence, or pace," as set forth in the "B" criteria. Plaintiff's Brief at 19-20. Dr. Moorehead's detailed mental status examination, conducted in February 2004, revealed that Plaintiff was cooperative and related in an adequate manner. (R. at 265). His socialization and family relationships were normal. (R. at 266). Plaintiff's thought process was coherent and goal directed with no evidence of hallucinations, delusions, or paranoia. Plaintiff assisted with shopping and he continued to drive. *Id.* Both attention and concentration and recent and remote memory skills were intact. He spent time watching television, listening to the radio, and trying to do light chores around the house. *Id.* These findings reflect that Plaintiff does not have such marked restrictions in either activities of daily living or maintaining concentration, persistence, or pace.

Moreover, Plaintiff's extensive activity with the volunteer fire department also refutes

Plaintiff's argument that he has marked restrictions of activities of daily living, as this reflects his "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." *See* 20 C.F.R. Part 404, Subpart P., Appendix 1 § 12.00C2. Indeed, Robert Hackett, who testified on behalf of Plaintiff, noted Plaintiff's activity with the fire department and provided no indication that Plaintiff had any interpersonal difficulties. (R. at 484-89). "He serves now, as a member of our first aid unit, and he also, you know, with the volunteer activity, as a, as a driver. I see Don, probably, maybe, 5 days out of a 7 day week . . . And there's, there's many, many calls, and so he'll come out and assist us with the, the driving activity." (R. at 486).

Rather, the evidence supports the ALJ's finding that Plaintiff retained the ability to follow and understand simple directions and instructions, and maintain attention and concentration. (R. at 18). Accordingly Plaintiff's ability to perform basic mental work activities was not significantly limited. Dr. Moorehead concluded that Plaintiff appeared cognitively capable of following and understanding simple directions and instructions, performing simple rote tasks, maintaining attention and concentration, consistently performing simple tasks and learning new tasks. (R. at 266-67).

Allan Hochberg, Ph.D., the State agency psychological consultant who evaluated the record on March 3, 2004, assessed all aspects of mental activities to be not significantly limited except for moderate limitations in Plaintiff's abilities to understand and remember detailed instructions and carry out detailed instructions. Such limitations would not affect Plaintiff's ability to understand, carry out, and remember simple instructions. (R. at 293-94). Dr. Hochberg concluded that Plaintiff could understand, remember, and perform simple tasks; maintain attention and concentration and pace; and learn new tasks. (R. at 295).

Plaintiff was subsequently evaluated on January 16, 2005 at Saint Clare's Hospital, Behavioral Health Services, for possible suicidal ideation after being involved in a single vehicle motor vehicle accident. (R. at 375-95). However, there is no indication that any worsening of Plaintiff's condition at this time would be disabling for a continuous period of at least twelve months, as required by the Act. 42 U.S.C. § 423(d)(1)(A); *Barnhart v. Walton*, 535 U.S. 212 (2002). Notably, Plaintiff indicated that his depression was related to his girlfriend having died in June 2004, and three months earlier, Plaintiff stopped taking his antidepressant medication. (R. at 375). The record contains no follow-up treatment.

It was reasonable of the ALJ to read the evidence as not calling for an affective disorder analysis. None of the medical reports suggested that Plaintiff's affective problems were debilitating or prevented Plaintiff from working. The ALJ did not overlook any of the psychiatric evidence, reviewed each part of it, and concluded reasonably that the evidence did not require a more thorough affective disorder analysis. While the Court of Appeals has held that the ALJ must document its analysis and must not ignore any evidentiary conflicts or countervailing evidence, none seems to exist here. See Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir.1981). The ALJ's review of the evidence related to Plaintiff's depression was reasonable, and the decision is supported by substantial evidence.

### *(3) The ALJ's Conclusions at Step Five*

The ALJ concluded that "there are jobs, existing in significant numbers in the national economy, which the claimant is able to perform," (R. at 21), and that the Plaintiff is, therefore, not disabled.

Plaintiff argues that this determination is erroneous and that his continued pain and

11

limitations, along with the fact that his legs occasionally "give out" and that he has to rest every day for several hours, prevent him from seeking the full range of sedentary jobs. (Pl's Br. at 15.) The ALJ's weighing of credibility appears to have been careful and fair, and his weighing of the evidence was reasonable.

Specifically, the ALJ noted that Plaintiff's veracity was questionable and that certain of Plaintiff's "allegations regarding his limitations are not totally credible . . ." (R. at 22). The ALJ pointed out that Plaintiff's statements to Dr. Moorehead were inconsistent with Hackett's testimony and with many of the facts and circumstances of Plaintiff's life, including his active–and commendable-- service on the volunteer fire department, including driving its ambulance on calls and using, on one occasion, the "Jaws of Life" during a motor vehicle accident. (R. at 20).

Thus, the ALJ's step five determination is based on substantial evidence and cannot be disturbed.

### *(4) Plaintiff's Ability to Work With Reasonable Regularity*

Plaintiff argues that his need to rest his legs for several hours a day deprived him of "numerous jobs"in the economy, and that the ALJ should have found him disabled because of his alleged inability to work a full, regular work day.

First, the extent of Plaintiff's inability to work a full day was a question of fact which was decided by the ALJ, and with which the court will not interfere absent a lack of substantial evidence. Substantial evidence is not lacking here.

Second, Plaintiff's legal argument is erroneous. Plaintiff relies on Wright v. Sullivan, in which the Court of Appeals distinguished--rather than "cited," as Plaintiff stated--Cornett v.

12

Califano, 590 F.2d 91 (4th Cir. 1978), and explained that "we do not understand why a person who is able to do gainful remunerative work for a significant portion of a day should be regarded as disabled, for numerous jobs exist in the economy which require less than a full workday." 900 F.2d 675, 680 (3d Cir. 1990).

Considering that nature and extent of Plaintiff's ailments, the ALJ's reading of the evidence, and determinations are reasonable.

*(5) Issues First Raised in Plaintiff's Reply Submission*

In his reply brief, Plaintiff raises two additional issues, not in response to any argument made by the SSA, that the ALJ failed to make a determination regarding whether Plaintiff's other ailments, singly or collectively, constituted severe impairments, and whether it was proper for the ALJ to render a vocational determination without hearing the opinion of a vocational expert. The arguments are without merit.

Regarding Plaintiff's various ailments, the ALJ described and discussed each of the medical expert reports and carefully analyzed the findings. The ALJ appropriately found that Plaintiff's depression (which had long pre-existed his ceasing work) did not significantly limit his ability to perform basic work activities which is consistent with Plaintiff having a non-severe mental impairment. Those impairments which have been determined to be severe are pertinent in assessing Plaintiff's claim at step five of the sequential evaluation process. See Sykes v. Apfel, 228 F. 3d 259, 265, 266, n. 10 (3d Cir. 2000). The reports did not suggest that any of Plaintiff's other ailments, taken apart or together, came even close to regulation severity. (R. at 20.)

Regarding the ALJ's burden of proving that there are jobs suiting Plaintiff's abilities and

13

limitations in the national economy, the ALJ in this case need not have called a vocational expert to support his determination. Although when impairments in addition to exertional impairments are involved, an ALJ is usually required to have evidence in addition to the Medical-Vocational Guidelines, an ALJ is not always required to rely on the opinion of a vocational expert when assessing a claimant's ability to engage in substantial gainful activity. See Landeta v. Comm'r of Soc. Sec., 191 Fed. Appx. 105, 111 (3d Cir. 2006). An ALJ may rely on agency rule-making "as a substitute for individualized case-by-case determinations" so long as the rules are "not arbitrary or capricious." Allen v. Barnhart, 417 F.3d 396, 403 (3d Cir. 2005). However, if an ALJ "wishes to rely on an SSR as a replacement for a vocational expert," as the ALJ did in this case, "it must be crystal-clear that the SSR is probative as to the way in which the [claimant's] nonexertional limitations impact the ability to work." Id. at 407.

      In this case the ALJ had additional evidence that supported his finding that Plaintiff's depression, in combination with his impaired knees, did not affect his ability to work at a sedentary level. He had suffered from depression from at least 1997 (the year of his knee injuries), but he was able to continue to work until July 31, 2001, when his knees condition worsened (R. at 423, 475). Further, the testimony of Plaintiff's friend, Robert Hackett, established that depression did not prevent Plaintiff from engaging on a continuous, five-day week basis in activities that were the equivalent of at least a part-time job. Each morning he met with members of the Roxbury-Flanders Fire Department - Rescue Squad, socializing with them and during the mornings responding to calls as driver of the Rescue Squad ambulance. On occasion he assisted the Squad with its other care-giving functions (R. at 485-87). Plaintiff's activities were limited only by his knee impairment. There was no suggestion that his

interpersonal relations or his services to the Rescue Squad were affected by any depression Plaintiff may have suffered. In these circumstances there is little, if anything, that a vocational expert could have added.

The ALJ's analysis on this point is thorough, and the determination is reasonable.

### III. CONCLUSION

For the reasons set forth above, the determination of the SSA will be affirmed. An order implementing this opinion will be entered.

      /s/ **Dickinson R. Debevoise**
      DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: December 27, 2007